## Colonial Park for Mobile Homes, Inc. *v.* Zoning Hearing Board.

Argued February 7, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Lee B. Lansberry,* for appellant.

*Victor S. Jaczun,* with him *Smith and Wilson,* for appellee.

*Robert A. Mills,* with him *G. Thomas Miller* and *McNees, Wallace & Nurick,* for Pennsylvania Mobile Housing Association, amicus curiae.

OPINION BY JUDGE ROGERS, May 5, 1972:

This appeal is from a final order of the Court of Common Pleas of Bucks County. The Zoning Officer of the Borough of New Britain refused the appellant corporation's application to use a tract of land as a mobile home park. The Zoning Hearing Board upheld the Zoning Officer and the court below, without hearing additional evidence, affirmed the Board. It is our duty to determine whether the Board abused its discretion or committed an error of law.

The appellant is a family-owned corporation. Its business predecessors were Mr. and Mrs. Wilfred J. Childs, who took title to 5.39 acres in Doylestown Township, Bucks County, in 1919. In 1947, Mr. and Mrs. Childs acquired a tract containing 18.327 acres, the subject of this lawsuit, located in New Britain Borough adjacent to their land in Doylestown Township. In 1948, they established on the five-acre tract a mobile home park of 73 places and a mobile home sales agency. These businesses were operated by Mr. Childs until his death in 1965, and since that time they have been conducted by Mrs. Childs and a son. The appellant corporation was created in 1966 and all of its stock is owned by the Childs, mother and son. When the park was first established, its sewage facilities were placed within the 18-acre tract in New Britain Borough, and at some time unspecified in the record a recreation facility consisting of a baseball field, one seesaw, two swings, a

sandbox, and a patio, all for use of residents of the park, were also placed on the lands in New Britain Borough. The mobile home park was subsequently attached to a public sewage system and the private facilities abandoned. In addition, the baseball field fell into disuse.

New Britain Borough enacted a zoning ordinance and map in 1963. The appellant's land was included within the "R"-Residence district in this and in a subsequently enacted ordinance to which we will later refer. A general regulation of the 1963 ordinance prohibited the use of any lot in the Borough as a mobile home park.

In 1967, the owners of appellant corporation formed the desire to use the 18-acre tract located in the Borough for mobile home park purposes. A principal reason for their decision was the stimulus they believed would be provided to the sales of mobile homes by the availability of lots for use by purchasers, there being a scarcity of such facilities in the vicinity. They memorialized the municipal authorities of New Britain Borough to amend its zoning ordinance without success. In January 1968, they filed the instant application to construct spaces for 112 mobile homes. No hearings were conducted by the Zoning Hearing Board until November 1969, as the result of postponements requested by the applicant based upon the illness of one of its owners. During the twenty-two months' period between the date of the original application and the time when hearings finally commenced, the Borough Zoning Ordinance was first amended and then in June 1969, entirely supplanted by a new ordinance. Both the amendment and the new ordinance removed the prohibition of mobile home parks as permitted uses in the Borough.[1]

---

[1] Appellant asserts that the 1963 ordinance also prohibited the use of mobile homes as dwelling houses throughout the Borough.

The new ordinance is not in this record. The court below commented, however, that under it appellant's land might be used as a mobile home park upon compliance with the regulations of the "R" district that each home be on a lot having a minimum area of 20,000 square feet and a minimum width of 100 feet. This statement is not here questioned by appellant.

The record contains extensive testimony concerning the character of uses in the immediate vicinity of appellant's property, as well as opinion testimony of real estate experts to the effect that the highest and best use of the 18-acre tract would be for the enlargement of the existing mobile home park located in Doylestown Township. We do not detail this evidence because we deem it immaterial to the decision in this case. *Jasy Corp. v. Board of Adjustment of Upper Moreland,* 413 Pa. 563, 198 A. 2d 854 (1964). There is no evidence in the record that the Borough's zoning restrictions had the effect of reducing the value of appellant's land to distress figures, that the tract could not be profitably developed in accordance with the zoning regulations or indeed that it could not feasibly be developed as a mobile home park in conformity with the lot area and width requirements of the ordinance. There is further nothing on this record concerning the Borough of New Britain, its population, its land area, the types of existing land use, the extent of present development or the amount of vacant land available for development.

We are asked to reverse the court below, whose opinion was prepared by the able and experienced Judge EDWIN H. SATTERTHWAITE, on the grounds that it erred (a) in not holding that the Zoning Hearing Board had abused its discretion in failing to grant a variance for the extension of the appellant's existing mobile home

---

The 1963 ordinance is in the record and we find in it no such prohibition.

park over its land in the Borough on which it had engaged in alleged nonconforming activities; or (b) in not holding that the 1963 ordinance was of exclusive applicability and was unconstitutional because it prohibited all mobile home parks; or (c) in not holding that the new ordinance, if applicable, is unconstitutional and of no effect because it imposes upon mobile home parks the same restrictions as are imposed on other residential uses. The appellant is wrong on all counts.

## I—The Application for Variance

We do not understand the appellant to argue that it is entitled to a variance apart from a consideration of the activities which it contends constituted nonconforming uses. Indeed, in the absence of evidence that the land as zoned has only distress value such an argument would be unavailing. Mere economic hardship will not support the grant of a variance (*Spadaro v. Zoning Board of Adjustment*, 394 Pa. 375, 147 A. 2d 159 (1959)); except where the zoning regulations complained of render the complainant's property practically valueless. *Peirce v. Zoning Board of Adjustment*, 410 Pa. 262, 189 A. 2d 138 (1963). Rather, appellant contends that because it acquired the property in question in 1947 for future expansion of the mobile home park it intended to establish and because it later used portions of it for sewage disposal and recreation, it may use the tract as a mobile home park. Since the sewage facility and baseball field were not in use at the time the application was made, appellant's argument rests either on the proposition that the presence of a seesaw, two swings, and a patio may be expanded to a community of 112 homes which the record shows will house more than 300 persons using 224 automobiles; or that the mobile home park on its land in Doylestown Township accorded it the right to expand into the adjoining Borough. The first proposition must

be rejected not only because it would be unreasonable to erect upon such an exiguous employment of land a whole community of homes, but also because the assertedly qualifying uses were in fact not nonconforming. Section 301(5) of the 1963 Borough ordinance specifically permits the use of land in the "R" district for "noncommercial park, playground or recreational area" purposes. The alternative contention that the use of the Township tract as a mobile home park established a nonconforming use of land in the Borough falls for several reasons. First, there is no proof in this record that the mobile home park use did not conform to Township regulations. Appellant's counsel was astute to exclude from the hearings as irrelevant all reference to the Township regulations. If in fact the appellant's use of its land for a mobile home park conformed to regulations of the Township, or if there were no such regulations, appellant had no nonconforming use anywhere, and is left with the palpably specious contention that the doctrine of nonconforming use ensures one who engages in a permitted use in one zoning district the right to engage in the same use in an adjoining district where such use is prohibited.

Furthermore, municipal boundaries have significance. *Michener Appeal*, 382 Pa. 401, 115 A. 2d 367 (1955). In *Bilbar Construction Co. v. Easttown Township Board of Adjustment*, 393 Pa. 62, 68, 141 A. 2d 851, 854, 855 (1958), Mr. Chief Justice CHARLES ALVIN JONES wrote: "It is plain enough that zoning restrictions in one township cannot be permitted to control or impinge upon the zoning regulations which a contiguous township may see fit to adopt."

Finally, and very basically, the appellant and its predecessors held its land in the Borough for 15 years before zoning and for an additional five years afterwards without doing anything with it which would sug-

gest to their neighbors that this was to be the site of a 112-unit mobile home park. As Mr. Justice MUSMANNO commented in *Cook v. Bensalem Township Zoning Board of Adjustment*, 413 Pa. 175, 179, 196 A. 2d 327, 330 (1964): "Only physical evidence manifested in the most tangible and palpable form can bring about the application of nonconforming clauses in a zoning ordinance. Before a supposed nonconforming use may be protected, it must exist somewhere outside the property owner's mind."

## II—THE APPLICABILITY OF THE 1963 ORDINANCE

The appellant states that it is entitled to its proposed mobile home park because the Borough's 1963 ordinance, in effect when it applied for a permit in 1968, contained an unconstitutional prohibition of all mobile home parks. Its contention, although not couched in those terms, is that it acquired a vested right in an unconstitutional ordinance of which it might not be dispossessed by curative action of the Borough taken subsequent to the filing of its application. It insists on this argument despite the fact that the almost two years' delay beween the date of the filing of its application and the Board hearings was occasioned solely by its inability to proceed with the hearings.

The appellant in this phase of its case relies upon that line of authorities holding that a zoning restriction enacted subsequent to the application for a permit in order to frustrate the application are ineffective for that purpose. *Gallagher v. Building Inspector, City of Erie*, 432 Pa. 301, 247 A. 2d 572 (1968); *Lower Merion Township v. Frankel*, 358 Pa. 430, 57 A. 2d 900 (1948); *Limekiln Golf Course, Inc. v. Zoning Board of Adjustment of Horsham Township*, 1 Pa. Commonwealth Ct. 499, 275 A. 2d 896 (1971). These cases provide a salutory exception to the general rule that the obtaining of a permit and an outlay of money or in incurring of

liabilities is required to confer a vested right to proceed contrary to new regulations. *Penn Twp. v. Yecko Bros.*, 420 Pa. 386, 217 A. 2d 171 (1966). The principle relied on has no application here. Both the amendments to the 1963 ordinance and the new ordinance of 1969 liberalized rather than restricted the use proposed by the appellant; they removed the ban on mobile home parks and permitted them, subject to the regulations generally applicable to residential use. Further, there is no evidence on this record that the Borough's action was motivated by the appellant's application. The applicant's contention first advanced in meetings with Borough Council in the summer of 1967 seems to have been based upon *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A. 2d 169 (1967), decided in March of that year. That case held that a general prohibition of an otherwise legitimate use required more substantial justification in the public interest than mere regulation of such a use. This holding may well have provided the impetus for the zoning changes made by the Borough. The appellant would have to make out a case of extraordinary appeal to induce us to hold that a municipality may keep apace of shifting and changing zoning principles only at the pain of suffering unwanted uses sought by those seeking advantage of the latest judicially discovered imperfection.

The 1963 ordinance, having been supplanted under circumstances not indicating a special purpose to deny appellant's proposed use of its land, was not in this case when the Board rendered its decision.

### III—The Validity of the 1969 Ordinance

As previously noted, it is conceded that the zoning ordinance in effect in New Britain Borough after June 1969, permitted mobile home parks subject to zoning

provisions generally applicable to residential uses. The appellant desires to place mobile homes on lots none larger than 7000 square feet. The ordinance requires 20,000 square feet in the "R" district in which appellant's land was and is located. While the new ordinance is not before us, the 1963 ordinance is; and we note that in a district other than "R," in which residential uses are permitted, the minimum lot size requirement is of only 10,000 square feet. There being no municipality-wide prohibition, the presumption of the ordinance's validity persisted. *Beaver Gasoline Co. v. Zoning Board of the Borough of Osborne, et al.,* 445 Pa. 571, 285 A. 2d 501 (1971). It was applicant's burden to overcome this presumption. It does not, we believe, do so by showing only that the sizes of the lots it proposed are as large as lots usually found in mobile home parks. This is especially the case where, as here, there are apparently areas of the Borough in which spaces as small as 10,000 square feet would be authorized. In any event, there is no evidence here that a mobile home park conforming to the "R" district regulations could not feasibly be created and conducted on appellant's property.

Except where there is a municipality-wide prohibition of an otherwise legitimate activity, the constitutional challenger may overcome the presumption of validity only with the arms and armaments of facts. While the Supreme Court of Pennsylvania has declared that in zoning cases the courts may consider "a challenge to the constitutionality of a zoning ordinance as a whole without first exhausting the question of the constitutionality of the ordinance as applied" (*Exton Quarries, Inc. v. Zoning Board of Adjustment, supra*), we know of no authority in this class of case[2] for strik-

---

[2] *Ammon R. Smith Auto Co. Appeal,* 423 Pa. 493, 223 A. 2d 683 (1966), represents the exception. There a sign ordinance for-

ing down the regulation without reference to the characteristics of the municipality whose legislation is under consideration. At we have noted, this record contains nothing concerning New Britain Borough upon which we could conceive an inclination, much less form a judgment, as to the constitutionality of the requirement in question. The appellant relies chiefly, of course, on *Girsh Appeal,* 437 Pa. 237, 263 A. 2d 395 (1970), which held pertinently that a zoning ordinance which unreasonably failed to provide for apartment uses was unconstitutional. There, apartments were not expressly prohibited, but might be and had in the past been, allowed by variance. In contrast, the instant regulations permit mobile home parks, subject to the regulations heretofore mentioned. Having thus ascertained that mobile home parks are indeed permitted (and without necessity of obtaining a variance) we might end our discussion with the conclusion that *Girsh* does not control. Unquestionably, however, *Girsh* stands for the principle that restrictions upon types of living accommodations are to be considered in a more critical fashion than restrictions upon nonresidential uses. Mobile home parks are a type of living accommodation preferred by some persons. If, therefore, the New Britain Borough regulations have an effect properly characterized as unreasonably failing to provide for this type of use throughout the Borough they might be found to be invalid. But there is not only no proof here that this ordinance has this effect, there is nothing upon which we might decide whether in this Borough such total proscription was unreasonable. Again by contrast, the record in *Girsh,* the original of which

---

bidding flashing signs, but none other, was invalidated out of hand. In *Norate Corporation, Inc. v. Zoning Board of Adjustment,* 417 Pa. 397, 207 A. 2d 890 (1965), a ban on "off-site" advertising signs was nullified with little consideration of factual matters.

out of caution we have examined, contains a detailed description of the township there involved, including its physical characteristics, population, extent of development, zoning regulations, public transportation facilities, and its location with reference to the City of Philadelphia. The conclusion that the allowance of apartments only by variance was an unreasonable failure to provide for this accepted type of residential use flowed from all of these facts, many of which are included in the several opinions filed in that case. Again, however, we emphasize that the New Britain Borough Ordinance here effective neither prohibits nor requires a variance for mobile home parks; it merely regulates the size and dimensions of lots, apparently differently in the several zoning districts. Such regulation of apartments was indeed *recommended* by the majority in *Girsh*: "Certainly it can protect its attractive character by requiring apartments to be built in accordance with (reasonable) setback, open space, height and other light-and-air requirements. . . ." 437 Pa. at 245, 263 A. 2d at 399.

We will doubtless be confronted by a case in which we must decide the companion to *Girsh,* with the mobile home park developer as a protagonist. This is not that case.

Affirmed.

---

OPINION BY JUDGE KRAMER (Concurring and dissenting in part) :

I agree with the majority on their determination that the appellant's argument based upon the expansion of a nonconforming use cannot be upheld under the facts of this case. This writer wrote a Dissenting Opinion in the case of *Township of Ohio v. Builders Enterprises, Inc.,* 2 Pa. Commonwealth Ct. 39, 276 A. 2d 556 (1971) ; and the Majority Opinion was affirmed by the Supreme Court at 446 Pa. 319, 284 A. 2d 686

(1972). The effect of these decisions is that the owner of a nonconforming use property must have patently indicated that the nonconforming use extends throughout the entire property in such a manner that his neighbors, and the public, knew of the nonconforming use at the time the zoning ordinance, or an amendment thereto, was passed, creating its nonconformity. In this case there is no such indication on the 18.327 acres and therefore no right to claim (or expand) a nonconforming use attached.

I must register my disagreement with my brothers, however, on the matter of the constitutionality of the Zoning Ordinances involved in this case. On January 25, 1968, the date whereon the appellant filed its application for a "Zoning Permit" for the purpose of "enlargement of mobile home park," the then effective Zoning Ordinance for New Britain Borough was Ordinance No. 64, enacted March 5, 1963, wherein, *inter alia,* it provided under a Definition of Terms:

"Article I—Section 104(12) *House Trailer*: Any vehicle designed, intended, arranged or used for living, eating, sleeping, business or similar purposes, whether arranged to stand on wheels or rigid supports."

"Section 104(24) *Trailer Camp*: A lot or premises used for occupancy by two (2) or more house trailers for any length of time, or by one trailer for more than four (4) weeks in any calendar year."

"Article III—Section 302 *Area Regulations*:

"1. LOT AREA AND FRONTAGE: A lot area of not less than twenty thousand (20,000) square feet shall be provided for every building hereafter erected or used in whole or in part as a dwelling and for every other main use permitted in this District. Such lot shall have a frontage of not less than one hundred (100) feet at the building line.

"2. DENSITY: The land subdivided for residential purposes shall have a density of not more than one and six-tenths (1.6) dwelling units per gross acre of land being subdivided."

"Article VII—Section 708 *Prohibited Uses*: No lot may be used as a trailer camp, dog kennel or outdoor commercial amusement area. . . ."

On February 20, 1968, (after the application for this zoning permit was filed) the Borough amended its Zoning Ordinance so as to bring "house trailer" within the definition of a "single-family dwelling" and the term "trailer camp," theretofore a prohibited use, was deleted from the Ordinance. On June 3, 1969, the Borough again amended its Ordinance whereby it changed certain definitions. For instance:

"Section 206—*Dwelling*: A building containing one (1) or more dwelling units.—*Detached Dwelling*: A building *or trailer* which is designed or occupied as a residence for one family and is substantially separated by side yards from any other structure or structures except accessory buildings." (Emphasis added.)

"Section 500—*District Regulations*: The regulations for each district pertaining to minimum lot area, minimum lot area per dwelling unit, minimum lot width, minimum front yard, minimum side yard, minimum rear yard, maximum height, and maximum building coverage shall be as specified in this section, 'Table of Dimensional Requirements,' subject to the further applicable provisions of Article IV, Article V and this and other borough ordinances." The Table of Dimensional Requirements provides that a single family detached dwelling (which after the amendment included mobile homes) be located on land having a minimum lot area of 20,000 square feet. It further provides for a minimum width of 100 feet and a maximum building lot coverage of 20 percent. The front and rear yards

require a minimum of 35 feet and side yards require a minimum of 15 feet. Interestingly enough, within the District C Zoning Classification, the minimum lot area was set at 10,000 square feet and the minimum lot width was set at 60 feet.

Some interesting statistical observations can be made from the Table of Dimensional Requirements which were a part of the amended Zoning Ordinance. To follow my observations, it is necessary to note that pursuant to the Regulations of the Department of Transportation the largest mobile home, or trailer, which may be transported on the public roads of this Commonwealth is 864 square feet (this means a mobile home of 75 feet by 12 feet, but including 36 square feet for the trailer hitch). With these mobile home size restrictions in mind (and setting aside for the moment the minimum lot *area* requirements of this Ordinance) all of the yard requirements could be met by the largest mobile home permitted in this state on 6,180 square feet. The 20 percent coverage provision can be met on 4,500 square feet. If we assume that the minimum lot width of 100 feet is a reasonable regulation, then a trailer or mobile home would need only 14,500 square feet. If a mobile home were permitted in District C, where the minimum lot width is 60 feet, then all that would be required would be 8,700 square feet. My observation therefore is that a mobile home can meet all of the regulations of this (1969) Zoning Ordinance with much less than the minimum *area* regulation of 20,000 square feet. It is not my intention herein to say that mobile homes should not meet all of the reasonable regulations applicable to all other dwellings. Rather, it is my position that if any of those regulations can be determined to be designed to unreasonably restrict a usage intended for an otherwise legitimate use, such as providing a residence for people, it should be stricken

as in violation of the constitutional right to use property. (*See Lord Appeal,* 368 Pa. 121, 125, 81 A. 2d 533, 535 (1951)).

The Majority is quite correct in viewing population density as a proper matter for effective regulation through zoning ordinances. *See National Land Investment Company v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A. 2d 597 (1965); *Bilbar Construction Co. v. Easttown Township Board of Adjustment,* 393 Pa. 62, 141 A. 2d 851 (1958); *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97 (1956). Also see Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L.    , No. 247, Section 603, 53 P.S. 10603. However, the Supreme Court of this Commonwealth in *National Land Investment Company v. Easttown Township Board of Adjustment, supra,* held that a municipality could not "zone out" people. This Court in *Beaver Gasoline Company v. Zoning Board of the Borough of Osborne* at 1 Pa. Commonwealth Ct. 458, 275 A. 2d 702 (1971), affirmed by the Supreme Court at 445 Pa. 571, 285 A. 2d 501 (1971), held that a municipality could not constitutionally prohibit totally within the municipality an otherwise legitimate use without evidence offered by the municipality that such prohibition was necessary for the public health, welfare and safety. From my point of view, under both the 1963 and 1969 Ordinances the minimum lot area requirements reflect a design on the part of this municipality to totally prohibit a mobile home park usage. However, the record does not disclose a clear attack on them for that reason.

This Court in a very recent Opinion in the case of *Derry Borough v. Shomo,* filed April 7, 1972, (not yet reported) in effect held that a municipality could not prohibit by indirection an otherwise legitimate use which it could not prohibit directly.

In view of the fact that the lower court did not take any additional testimony, the scope of review of this Court is whether or not the Zoning Hearing Board abused its discretion in denying the Zoning Permit or committed an error of law. It is important to note that the Zoning Officer of the Borough on January 29, 1968, refused the Permit for the following reason: "Reasons: Ordinance No. 64, Section 708, Prohibited Use. No lot may be used as a trailer camp." The Zoning Hearing Board in its adjudication plainly concluded that the appellant's application for a zoning permit was refused because it was in violation of the 1963 Ordinance "as originally adopted." This was an error of law. Thereafter for the first time in the case the Board referred to the 1969 amendment when it stated: "3. Applicant's proposal would not comply with the minimum lot size provisions of either the 1963 Ordinance as amended or of the 1969 Zoning Ordinance."

The fatal weakness of the appellant's case is that it did not adequately support or provide sufficient evidence that the minimum lot size requirements of 20,000 square feet, which under the 1963 Ordinance was applicable to all usages within the Borough, was designed to exclude mobile home parks. Testimony of the appellant's expert as to what the normal or usual square feet usage for mobile homes in this Commonwealth, or in other mobile home parks, is not evidence from which the Board, or a reviewing court, could reach a total exclusion result. And so it would appear from the record in this case that the appellant has failed to meet any burden under any argument to show that it was harmed by the minimum lot sizes provided in the 1963 Zoning Ordinance.

I disagree with my brothers that the 1969 amendments are applicable to this case. Only the zoning ordinance then in effect when the application was made

can be controlling as to the rights of the appellant, including the minimum lot area size requirement.

I am concerned deeply that the Opinion of the Majority may come to be construed by municipalities across this Commonwealth as a judicial imprimatur on a 20,000 square feet lot area requirement for mobile home park usages. A reading of the opinions issuing forth from our various courts on the subject of mobile home usage, makes it clear to me that neighboring property owners have seized upon mobile homes as a threat to privacy and real estate values. Their assaults disregard the needs and desires of those citizens unable to afford the costs of conventional housing and those who simply choose rural over urban living. They disregard constitutional property rights. These conceived threats to privacy and real estate values were at one time attributed to the proliferation of gasoline stations, super markets, and shopping centers; now it is mobile homes. It would appear zoning ordinances are being employed for the use of eliminating "undesirables" rather than for the legislatively manifested concern for public health, welfare and safety. Zoning ordinances should not be designed and used to prohibit otherwise legitimate uses. Zoning ordinances must not be used to accomplish indirectly that which cannot be accomplished directly, i.e., total prohibition of an otherwise legitimate use.

The attempts by municipalities to exclude mobile home usage are varied indeed. Some municipalities attempt to exclude mobile homes by legislating minimum floor areas, some utilize minimum lot size, while others relegate the use to some undesirable location within the municipality (and thereby assume the position that a total prohibition situation is avoided). We certainly have not seen the last of ingenious schemes to eliminate the "undesirables". We are compelled to await the

presentation of such attempts on a case-by-case disposition.

In instances wherein the record supports an allegation that the intent of the land use regulation is to prohibit or deter an otherwise legitimate use, I will continue to protest such unlawful distortions of the zoning law. I shall continue on this course until such day when the Supreme Court of Pennsylvania by decision, or the General Assembly by legislation, affirmatively declares the legality of the exclusion of "undesirables".

In this case I would hold that under the 1963 Ordinance there was an unconstitutional prohibition against the mobile home park usage for which the appellant was desirous of receiving a Zoning Permit. I would further remand the matter back with directions that the application be granted, subject to all of the zoning regulations applicable to detached single-family dwellings, including the minimum lot area requirements, under the 1963 Ordinance. I take this position for the reason that the appellant failed to prove that the 20,000 square feet minimum lot area size regulation as set forth in the 1963 Ordinance was intended to "zone out" the appellant or any other mobile home park operator. An appellate court can only review the action of the lower adjudicatures based upon the record made. The record in this case fails to support the argument that the minimum lot area size requirements should not apply to this appellant.

Judge CRUMLISH joins in this opinion.

---

CONCURRING AND DISSENTING OPINION BY JUDGE MENCER:

I agree with the majority that the 18.327 acre tract cannot now be considered as a part of a larger nonconforming whole, nor that relief can be granted using an expansion of a nonconforming use theory. I also agree

that this record is deficient in evidencing that the minimum lot size requirements were designed to exclude mobile homes, or mobile home parks, from the Borough.

The majority fails to convince me, however, why the 1963 ordinance, under which applicants first proceeded, should not govern this case. The "Application for Appeal" filed by the applicant on February 1, 1968, contained the following section: "10. Reasons appellant believes Board should approve desired action (refer to section or sections of ordinance under which it is felt that desired action may be allowed, and note whether hardship is (or is not) claimed, and the specific hardship)." The applicant completed this section as follows: "The Board should approve the application for permit as the total prohibition set forth in Section 708 of the Zoning Ordinance is invalid and unconstitutional. The prohibition, in order to be valid, must have a reasonable relationship to public health, safety, morals or the general welfare, and the power to regulate land use does not extend to arbitrary or unreasonable intermeddling with private ownership of property. A declaration that moble home parks are 'unwelcome guests' is not an adequate basis for enacting an ordinance which totally prohibits mobile home parks." This was a direct challenge to the constitutionality of the ordinance,* and we note what the Supreme Court said in

---

* "The cases have not always managed to distinguish clearly between a challenge to the administrative decision on a variance request and a true constitutional challenge. This confusion is in large measure due to the fact that a variance, although an administrative remedy, is in itself a form of constitutional challenge. The difference is that a variance request challenges the ordinance because, as applied to a specific piece of property, the ordinance operates to create an undue hardship which is peculiar to that property. By contrast, a true constitutiontal challenge is a challenge to the scope of the statutory authority regardless of the existence of a particular hardship, and may challenge the operation of the ordinance as applied to a specific piece of property as well

*Walter v. Zoning Board of Adjustment,* 437 Pa. 277, 281, 263 A. 2d 123, 126 (1970), quoted with approval in *Schiller-Pfeiffer, Inc. v. The Upper Southampton Township Board of Adjustment,* 1 Pa. Commonwealth Ct. 588, 595, 276 A. 2d 334, 338 (1971)': "Appellees' request for a variance is governed by the provisions of the zoning ordinance as it exists at the time of the application for a variance. It is that ordinance which is the controlling declaration of public policy as to the subject property. . . ." I conclude, therefore, that only the 1963 ordinance is applicable, and that the later amendment (on February 20, 1968) and the new ordinance (in June, 1969) have only limited relevance here. Certainly this direct constitutional challenge was to the 1963 ordinance, which alone existed at that time, and not to any later amendment or ordinance. Additionally, I view with particular circumspection the February 20, 1968, amendment lifting the total prohibition of mobile home parks, coming as it did so soon after applicant's January 25 application and February 1 appeal.

It is true that twenty-two months passed between the time of application and the first Board hearing. This delay was primarily caused by the applicant, its reason being (at least in part) the illness of one of its owners. Although I regret such delay I cannot counte-

---

as the application of the ordinance to all of the land within its purview." Comment, *The Pennsylvania Supreme Court and Exclusionary Suburban Zoning: From Bilbar to Girsh—A Decade of Change,* 16 Vill. L. Rev. 507, 511 (1971)'; see *National Land and Investment Company v. Easttown Township Board of Adjustment,* 419 Pa. 504, 511, 215 A. 2d 597, 601-2 (1965) ("Our cases permit one who petitions for a variance to a board of adjustment to challenge before the board or thereafter on appeal to the court of common pleas the constitutionality of the zoning ordinance. . . . In essence, an application for a variance implies a challenge to the legality of the zoning ordinance as it applies to a specific piece of property.").

nance penalizing the applicants by deciding this appeal under any standard other than the 1963 ordinance which, I submit, was unconstitutional because of its total prohibition of "trailer camps" (or mobile home parks).

Zoning ordinances in Pennsylvania which excluded mobile homes or mobile home parks from the entire municipality have been held invalid. *See Uwchlan Township v. Carter*, 11 Ches. Co. Rep. 304 (1963); *Shellhamer v. Zoning Board of Adjustment*, 29 Lehigh L. J. 228, 52 Pa. Mun. L. Rep. 315 (1961); *Hunter v. Richter*, 9 D. & C. 2d 58 (1956); *Borough of Mountville v. Miller*, 7 D. & C. 2d 577 (1956); *In re Falls Township Trailer Ordinance*, 2 Bucks Co. L. Rep. 91, 84 D. & C. 2d 199, 44 Pa. Mun. L. Rep. 33 (1952); *Commonwealth v. Amos*, 44 D. & C. 125 (1941); *see also Roddick v. Lower Macungie Zoning Board*, 31 Lehigh L. J. 496, 39 D. & C. 2d 529 (1966). *Beaver Gasoline Company v. Osborne Borough*, 445 Pa. 571, 285 A. 2d 501 (1971), settles the matter, however, since there the Supreme Court held that where there is a total municipality-wide prohibition of an activity which, on its face, does not give rise to an indication of the protection of a legitimate public interest controllable by zoning laws, an applicant for a zoning permit has met his burden by showing the total prohibition, and the municipality must then establish the legitimacy of the prohibition by evidence establishing what public interest is sought to be protected. Normally, then, this case would be remanded ". . . to allow the borough to produce additional evidence" to justify its total ban. Only now, however, do the Borough's subsequent changes in the ordinance become relevant. Since the Borough lifted its total prohibition of mobile home parks subsequent to appellant's application (in the face of *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A. 2d

169 (1967) ), we must assume the Borough either could not justify the ban or considered it unlawful or inequitable. There is no need to remand, therefore, and appellants should be permitted to proceed with their plans according to the 1963 ordinance building requirements, including, unfortunately, the minimum lot size requirements.

I fear, however, that by indirectly approving such minimum lot size requirements we may create a false impression that we approve of them generally relative to mobile homes.

The problem presented by this appeal is well stated as follows: "The Pennsylvania cases hold that the same building regulations must be uniformly applied to house trailers of a settled or fixed use and other dwellings of a permanent nature even though it may be impossible for any house trailers to comply with such regulations. *Thus, the use of trailers as dwellings in a municipality may be effectively prohibited altogether by a uniform ordinance, even though regulations providing for outright prohibition of house trailers are invalid because discriminatory.* However, . . . it would seem that different building regulations might be justified as between house trailers and other types of permanent dwellings *if based on a reasonable classification having a direct relation to the health, safety, morals or general welfare of the occupants and of the community in general.*" (emphasis added) Eshelman, *Municipal Regulation of House Trailers In Pennsylvania*, 66 Dick. L. Rev. 301, 307-8 (1962).

As my Brother KRAMER aptly illustrates, the minimum lot area of 20,000 square feet and the other building requirements hardly seem reasonable. Significant advancements have been made since *Commonwealth v. Helmuth*, 73 D. & C. 2d 370 (1949), cited by the lower court, wherein the conviction of a trailer camp operator

for violation of a township zoning ordinance requiring a minimum lot area of *2,400 square feet* for a one-family dwelling was upheld. Mobile homes have substantially increased in size since 1949 and minimum lot sizes could be expected to rise commensurately, but 20,000 square feet is clearly out of proportion.

I am not unaware of *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97 (1956) (minimum lot size of 20,000 square feet of land for a *stone dwelling house in the district in question* was held valid), but perhaps because of today's housing needs the "general welfare of the occupants and of the community in general" may require less restrictive requirements. Consider only the following: "Without question, the United States is experiencing a housing crisis. The President's Committee on Urban Housing has indicated that 26 million new and rehabilitated housing units must be provided by 1978. To meet the needs of low-income and moderate-income families, the Committee recommended federal subsidization for six to eight million of these units. This indicates clearly that the conventional housing industry has been unable to provide adequate housing for a substantial segment of the American population. The failure is so great that it is doubtful whether the industry, as presently structured, can survive without major adjustments. Recognition of this colossal failure has spurred interest in developing and applying technological innovations in the housing field. Indicative of the fact that mobile homes can provide a viable alternative to inneffecient conventional housing for many Americans is the continuing expansion of the mobile home industry while the housing industry as a whole is experiencing difficulty. In 1967, mobile homes accounted for 75 percent of all new dwelling starts under $12,000 in the United States. By 1969, more than 90 percent of all single-family units that sold for less than

$15,000 were mobile homes, as were 98 percent of all homes selling for under $12,500. Moreover, one-third of all new single-family dwellings constructed in 1969 were mobile homes. In 1970, mobile home sales were expected to reach the $3 billion level, with the production of 475,000 units. Construction of 700,000 units is forecast for 1972, and one million units are forecast for 1975. It is thus apparent that mobile homes fill a housing void that would otherwise exist." Comment, *Mobile Homes in Kansas: A Need For Proper Zoning,* 20 Kan. L. Rev. 87, 87-8 (1971). Thus, the Legislature has just passed legislation designed to *stimulate* the mobile and modular housing industry in Pennsylvania.

I am not opposed to any *reasonable* effort to regulate mobile home living, but I sincerely believe that this action, in prohibiting, first directly and then indirectly, mobile home parks in New Britain Borough is manifestly unfair. Its impact poses a threat to a way of living and to an industry that should enjoy fair and reasonable treatment.