Delaware County Investment Corporation, Appellant, *v.* Zoning Hearing Board of the Township of Middletown, Appellee.

Argued October 8, 1975, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*John P. Trevaskis, Jr.,* with him *Robert S. Bennett, Jr.,* and *Trevaskis, Doyle, Currie, Nolan & Bunting,* for appellant.

*Thomas J. Beagan, Jr.,* with him *Timothy B. Barnard,* for appellee.

OPINION BY JUDGE WILKINSON, November 19, 1975:

Appellant, the owner of approximately 38.735 acres of land in Middletown Township, Delaware County, here appeals from the October 10, 1974 order of the Delaware County Court of Common Pleas affirming the appellee's denial of appellant's variance application. The rejected variance application sought reduction in minimum lot size from 20,000 square feet to 5,000 square feet, increased maximum building coverage limits on the lots, reduction in minimum set backs for front, side and rear yard, reduction in minimum side yard and reduction in the width of the building line, all in conjunction with appellant's plans to develop the land as a mobile home park.

Originally, appellant applied on March 11, 1971, to the Township Board of Supervisors for a change of zoning from R-2, single-family detached dwellings, to a mobile-home classification. This request was denied on April 12, 1971. On April 29, 1971, proceeding under the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, *as amended,* 53 P. S. §10101 *et seq.,* appellant submitted to the supervisors an application for development including a proposed amendment to the zoning code, which at that time prohibited trailer camps. This application was also rejected; however, on June 14, 1971, the Township deleted the trailer camp prohibition from its zoning ordinance.

On July 2, 1971, appellant appealed from the supervisors' rejection to the Delaware County Court of Common Pleas. The supervisors filed a motion to quash, which was granted by the court.[1]

---

1. Appellant labels Judge CATANIA's order of April 7, 1972, as a remand. If correct, this would preserve appellant's status to object to Middletown Township's Zoning Ordinance as it stood at the date of appellant's original application. However, Judge

On November 30, 1972, appellant submitted a new application for a variance to the Zoning Hearing Board, from which the instant controversy arises. Appellant questions both the denial of the variance and the constitutionality of the zoning ordinance.

Our scope of review on an appeal from the denial of a variance where the court below took no additional testimony is limited to whether the Zoning Hearing Board abused its discretion or committed an error of law. *Soble Construction Company v. The Zoning Hearing Board of the Borough of East Stroudsburg*, 16 Pa. Commonwealth Ct. 599, 329 A.2d 912 (1974); *Grace Building Co., Inc. v. Hatfield Township*, 16 Pa. Commonwealth Ct. 530, 329 A.2d 925 (1974).

Appellant contends that the zoning ordinance is unconstitutional in that it excludes mobile homes from the Township. Appellant is not aided in this argument by the Township's earlier mobile home prohibition because the prohibition was repealed prior to the filing of the instant application. There being no municipality-wide prohibition, the presumption of the ordinance's validity persists. *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board*, 5 Pa. Commonwealth Ct. 594, 290 A.2d 719 (1972). Mobile homes are permitted in any residential district in Middletown Township. Appellant simply failed to carry its heavy burden of proof on this contention.

We similarly find applicant has failed to prove its assertion that Middletown Township's zoning unconstitutionally denies mobile home owners the right to travel. The cases cited by appellant concerning regulation of immigration, residency requirements, and limitations on population growth are inapplicable.

Finally, a review of the record fails to convince us that appellee acted improperly in denying the appellant's

---

CATANIA's order, in response to a motion to quash, clearly reads: "it is hereby ORDERED, ADJUDGED and DECREED, that the said appeal be and the same is hereby quashed."

variance application. To receive a variance, an applicant must prove that the zoning ordinance resulted in burdening his land with an unnecessary hardship unique to it, and that the variance would not adversely affect the public health, safety or welfare. *Abrams v. The Zoning Hearing Board of the Borough of Danville,* 21 Pa. *Commonwealth Ct.* 284, 344 A.2d 734 (1975) ; *Township of Haverford v. Spica,* 16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974). A variance should only be granted in exceptional circumstances. *Drop v. Board of Adjustment,* 6 Pa. Commonwealth Ct. 64, 293 A.2d 144 (1972).

The record clearly supports appellee's finding of fact 11:

> "There are not any unique physical circumstances or conditions peculiar to the property that would prevent or prohibit its development in accordance with R-2 20,000 square foot zoning."

At least three of appellant's own witnesses, Gilchrist, Horne, and Asbury testified in agreement with the finding. Again, the appellant has failed to carry his burden of proof.

Accordingly, the order of the court below is affirmed.

––––––

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. Once again, I must state my opposition to a 20,000-square-foot lot area requirement for mobile home park usages. I am not opposed to any reasonable effort to regulate mobile home living, but I do not consider a 20,000-square-foot lot area to be a reasonable regulation relative to mobile homes.

In order to explain my position more fully, I will, because of the applicability to this case, repeat portions of the concurring and dissenting opinions filed by Judge KRAMER and this writer in *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board,* 5 Pa. Common-

wealth Ct. 594, 290 A. 2d 719 (1972). Judge KRAMER so aptly stated the following:

"I am concerned deeply that the Opinion of the Majority may come to be construed by municipalities across this Commonwealth as a judicial imprimatur on a 20,000 square feet lot area requirement for mobile home park usages. A reading of the opinions issuing forth from our various courts on the subject of mobile home usage, makes it clear to me that neighboring property owners have seized upon mobile homes as a threat to privacy and real estate values. Their assaults disregard the needs and desires of those citizens unable to afford the costs of conventional housing and those who simply choose rural over urban living. They disregard constitutional property rights. These conceived threats to privacy and real estate values were at one time attributed to the proliferation of gasoline stations, super markets, and shopping centers; now it is mobile homes. It would appear zoning ordinances are being employed for the use of eliminating 'undesirables' rather than for the legislatively manifested concern for public health, welfare and safety. Zoning ordinances should not be designed and used to prohibit otherwise legitimate uses. Zoning ordinances must not be used to accomplish indirectly that which cannot be accomplished directly, i.e., total prohibition of an otherwise legitimate use.

"The attempts by municipalities to exclude mobile home usage are varied indeed. Some municipalities attempt to exclude mobile homes by legislating minimum floor areas, some utilize minimum lot size, while others relegate the use to some undesirable location within the municipality (and thereby assume the position that a total prohibition situation is avoided). We certainly have not seen the last of ingenious schemes to eliminate the 'undesirables.' " 5 Pa. Commonwealth Ct. at 611, 290 A. 2d at 727-28.

My continuing view of this problem can be readily discerned from the following which I wrote in my concurring and dissenting opinion in *Colonial Park*:

"The problem presented by this appeal is well stated as follows: 'The Pennsylvania cases hold that the same building regulations must be uniformly applied to house trailers of a settled or fixed use and other dwellings of a permanent nature even though it may be impossible for any house trailers to comply with such regulations. *Thus, the use of trailers as dwellings in a municipality may be effectively prohibited altogether by a uniform ordinance, even though regulations providing for outright prohibition of house trailers are invalid because discriminatory.* However, ... it would seem that different building regulations might be justified as between house trailers and other types of permanent dwellings *if based on a reasonable classification having a direct relation to the health, safety, morals or general welfare of the occupants and of the community in general.*' (emphasis added). Eshelman, Municipal Regulations of House Trailers In Pennsylvania, 66 Dick. L. Rev. 301, 307-8 (1962).

"As my Brother KRAMER aptly illustrates, the minimum lot areas of 20,000 square feet and the other building requirements hardly seem reasonable. Significant advancements have been made since Commonwealth v. Helmuth, 73 D & C. 2d 370 (1949), cited by the lower court, wherein the conviction of a trailer camp operator for violation of a township zoning ordinance requiring a minimum lot area of *2,400 square feet* for a one-family dwelling was upheld. Mobile homes have substantially increased in size since 1949 and minimum lot sizes could be expected to rise commensurately, but 20,000 square feet is clearly out of proportion.

"I am not unaware of Volpe Appeal, 384 Pa. 374, 121 A. 2d 97 (1956) (minimum lot size of 20,000

square feet of land for a *stone dwelling house in the district in question* was held valid), but perhaps because of today's housing needs the 'general welfare of the occupants and of the community in general' may require less restrictive requirements. Consider only the following: 'Without question, the United States is experiencing a housing crisis. The President's Committee on Urban Housing has indicated that 26 million new and rehabilitated housing units must be provided by 1978. To meet the needs of low-income and moderate-income familities, the Committee recommended federal subsidization for six to eight million of these units. This indicates clearly that the conventional housing industry has been unable to provide adequate housing for a substantial segment of the American population. The failure is so great that it is doubtful whether the industry, as presently structured, can survive without major adjustments. Recognition of this colossal failure has spurred interest in developing and applying technological innovations in the housing field. Indicative of the fact that mobile homes can provide a viable alternative to inefficient conventional housing for many Americans is the continuing expansion of the mobile home industry while the housing industry as a whole is experiencing difficulty. In 1967, mobile homes accounted for 75 percent of all new dwelling starts under $12,000 in the United States. By 1969, more than 90 percent of all single-family units that sold for less than $15,000 were mobile homes, as were 98 percent of all homes selling for under $12,500. Moreover, one-third of all new single-family dwellings constructed in 1969 were mobile homes. In 1970, mobile home sales were expected to reach the $3 billion level, with the production of 475,000 units. Construction of 700,000 units is forecast for 1972, and one million units are forecast for 1975. It is thus apparent that mobile homes fill a

housing void that would otherwise exist.' Comment, Mobile Homes in Kansas: A Need For Proper Zoning, 20 Kan. L. Rev. 87, 87-8 (1971)." 5 Pa. Commonwealth Ct. at 616-18, 290 A. 2d at 730-31 (emphasis in original).

The impact of our decision today, although based on traditionally sound criteria for the granting of variances, poses a threat to a way of living that must, sooner or later, be accommodated by reasonable and economically realistic zoning regulations. In my view, the sooner the better.

Judge KRAMER joins in this dissent.

Judge BLATT joins in this dissent.