573 A.2d 1011

**In re Appeal of Arthur SHORE from the Decision of the Board of Supervisors of Solebury Township denying Request for Curative Amendment.**

**Appeal of SOLEBURY TOWNSHIP.**

Supreme Court of Pennsylvania.

Argued Oct. 27, 1988.

Decided April 26, 1990.

Stephen B. Harris, Bucks, for appellant.

Edward F. Murphy, Caroline F. Achey, Richard P. McBride, for Montgomery, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

ZAPPALA, Justice.

We review an order of Commonwealth Court remanding this case to the Court of Common Pleas of Bucks County based on a finding that Solebury Township's zoning ordinance unlawfully prohibited the development of mobile home parks. 107 Pa.Cmwlth. 522, 528 A.2d 1045. The question is whether this ordinance, which provides for a variety of housing types and population densities, is nevertheless exclusionary with regard to its treatment of mobile home parks.

In this protracted litigation, the Township first held that its ordinance did not prohibit mobile home parks, and denied

the developer's proposed curative amendment. On appeal, the court of common pleas found that the ordinance did prohibit mobile home parks, rejecting the Township's contrary finding for lack of substantial evidence. Nevertheless, the court affirmed the denial of the curative amendment based on its reading of our decision in *In Re: M.A. Kravitz Co., Inc.*, 501 Pa. 200, 460 A.2d 1075 (1983). Commonwealth Court also affirmed, based on the interpretation it had given *Kravitz* in *Fernley v. Board of Supervisors of Schuylkill Township*, 76 Pa. Commw. 409, 464 A.2d 587 (1983). While the developer's petition for allowance of appeal was pending, we reversed the Commonwealth Court's decision in *Fernley* at 509 Pa. 413, 502 A.2d 585 (1985). Accordingly, we granted the petition and remanded for reconsideration in light of our decision in *Fernley*. Commonwealth Court then determined that the ordinance improperly excluded mobile home parks, and remanded to the common pleas court for consideration in accordance with 53 P.S. § 11011(2). We granted the Township's petition for allowance of appeal and now affirm.

The Township's primary argument is that this case falls within the rationale of *Kravitz*. There, a plurality of this Court sustained an ordinance that failed to provide for townhouses although provision was made for residential uses other than single family detached dwellings. It did not approve a rule whereby an ordinance prohibiting a given residential use could nevertheless be sustained under the "fair share" analysis of *Surrick*. See 501 Pa. at 210–211, 460 A.2d at 1081. As was later made clear in *Fernley*, an ordinance that prohibits a particular use is not tested by the "fair share" analysis.

An important element of the plurality opinion in *Kravitz*, seemingly ignored in later cases looking to it for guidance, was the distinction between an ordinance prohibiting particular uses and an ordinance failing to provide for particular uses. A zoning ordinance, like all legislative enactments, is presumed to be valid and constitutional; one challenging it bears a heavy burden of proof. Demonstrating that an

ordinance expressly excludes a particular use is perhaps the most clear-cut means of meeting that burden, for "the constitutionality of total prohibitions ... cannot be premised on the fundamental reasonableness of allocating to each type of activity a particular location in the community." *Exton Quarries Inc. v. Zoning Bd. of Adjustment,* 425 Pa. 43, 59, 228 A.2d 169, 179 (1967). Though the proof is more difficult, it is also possible to show that a use is effectively prohibited throughout the municipality although it is apparently permitted. *Benham v. Middletown Township,* 22 Pa. Commw. 245, 349 A.2d 484 (1975).

In *Kravitz,* it was noted that the township had, on review, determined that townhouse development would be permitted in one of the residential districts, not by variance or special exception but as a permitted use. This determination, supported by substantial evidence in the record and affirmed by the court of common pleas, gave indication that the zoning power was not being used unreasonably. In other words, the challenger had not met its burden of proving that the ordinance effectively prohibited the proposed use.

■ Although the Township here claims that its ordinance merely fails to provide for mobile home parks, we are satisfied that the common pleas court did not err in characterizing the ordinance as effectively prohibiting mobile home parks. We note particularly that the ordinance recognized mobile home parks by including a definition of them, but did not list them in any of the residential zones, where the enumerated uses *and no others* were permitted. The Board's original rationale, that mobile home parks would be permitted, essentially as subdivisions made available for rent, in either the Residential Development District or the Village Residential District is untenable. Although each individual unit in a mobile home park might qualify as a single family dwelling, the large minimum lot size for each dwelling (20,000 square feet) in those districts would make development of a mobile home park economically unfeasible, allowing at most only 2.1 units per acre *before* account-

ing for road right of way requirements. (By way of comparison, the developer proposed minimum lot sizes of 4300 square feet, at a density of 5.3 units per acre *after* allowing for road right of way and open space, a density described as lower than average for mobile home parks.)

We are aware that some early Commonwealth Court cases affirmed rulings where mobile home parks would have been required to meet minimum lot sizes of 20,000 square feet per dwelling unit. Cf. *Delaware County Investment Corporation v. Zoning Hearing Board of Township of Middletown*, 22 Pa. Commw. 12, 347 A.2d 513 (1975); *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board*, 5 Pa. Commw. 594, 290 A.2d 719 (1972). In *Delaware County Investment*, however, the landowner had sought a *variance* from the township's minimum lot size regulation and the court found no abuse of discretion in the finding that the landowner had not shown the unique hardship necessary to the grant of a variance. In *Colonial Park*, the court, while acknowledging that such evidence might exist, found no evidence in the record before it from which it could conclude that the burden of demonstrating the unconstitutionality of the ordinance had been met. Here, as stated, the court of common pleas ruled otherwise on the record before it, Commonwealth Court affirmed, and we find no error.

▄▄ Commonwealth Court remanded this case to the court of common pleas for entry of an order consistent with Section 1011(2) of the Municipalities Planning Code, 53 P.S. § 11011(2). While this appeal was pending, however, the General Assembly repealed Article X of the Code, dealing with appeals of land use decisions, and replaced it with Article X–A. Act 1988–170. Unlike Section 1011(2), new Section 1006–A, 53 P.S. § 11006–A, does not enumerate specific factors that a court must consider in granting relief. Rather, as it did in 1972, the Code now grants courts broad discretion to approve the proposed use "as to all elements," or to approve it "as to some elements, refer[ring] other elements to the [appropriate authority] for

further proceedings, including adoption of alternative restrictions, in accordance with the court's opinion and order." Although Act 1988–170 contained no indication as to whether the legislature intended it to be applicable to cases pending when it became effective, it would be inappropriate to require the court, on remand, to be guided by a statute that has been repealed.

The appellee argues that the proper relief in this case is entry of judgment ordering approval of the development *as filed.* This Court, however, is not in a position to determine the extent to which the proposal ought to be approved. The court of common pleas is best situated to judge whether the development should be approved as filed or whether the Board, under the supervision of the court, may require adherence to certain reasonable regulations.

Insofar as it reverses the August 7, 1985 order of the Court of Common Pleas of Bucks County, the order of the Commonwealth Court is affirmed. Insofar as it remands for entry of a supplemental order consistent with Section 1011(2) of the Municipalities Planning Code, 53 P.S. § 11011(2), the order of the Commonwealth Court is vacated. The case is remanded to the Court of Common Pleas of Bucks County for entry of an order and proceedings consistent with Section 1006–A of the Municipalities Planning Code, 53 P.S. § 11006–A. The court of common pleas shall retain jurisdiction during the pendency of this matter.

Jurisdiction relinquished.

Former STOUT, J., did not participate in the decision of this case.

NIX, C.J., files a joining concurring Opinion.

McDERMOTT, J., files a joining concurring Opinion in which PAPADAKOS, J., joins.

LARSEN, J., files a dissenting Opinion.

NIX, Chief Justice concurring.

I join the opinion of Mr. Justice Zappala and write separately to emphasize the obligation of the lower court, in its

supervisory capacity over the Board, to apply only *reasonable* restrictions, if any, upon the development or use as filed. It is true the pertinent language of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10101, et seq., ("the Code"), gives broad discretion to the courts to "order the described development or use approved as to all elements or ... order it approved as to some elements and refer other elements to the governing body agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order." 53 P.S. § 11006–A(c). However that discretion must be exercised within a frame of reference allowing the proposed development or use of the successful challenger, in this case Arthur Shore, as impacted by those purposes enumerated in Section 10105 of the Code.[1] Restrictions posing insuperable difficulties or economic impracticability shall not and will not be countenanced irrespective of any rationale advanced therefor.

McDERMOTT, Justice, concurring.

The retributory concepts underlying *Fernley*,[1] that communities should be somehow punished because, unlike enterprising developers, they did not foresee all the commercial and residential possibilities in their community and therefore lost their opportunity for rational development is here ended. The anomaly that owners of land could have

---

1. § 10105. Purpose of Act

It is the intent, purpose and scope of this act to protect and promote safety, health and morals; to accomplish coordinated development; to provide for the general welfare by guiding and protecting amenity, convenience, future governmental, economic, practical, and social and cultural facilities, development and growth, as well as the improvement of governmental processes and functions; to guide uses of land and structures, type and location of streets, public grounds and other facilities; to promote the conservation of energy through the use of planning practices and to promote the effective utilization of renewable energy sources; and to permit municipalities to minimize such problems as may presently exist or which may be foreseen.

1. *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985).

more than reason would allow, because they caught the municipality sleeping, is an invidious and destructive concept for any rational planning for the health and welfare of the community involved.

The legislature[2] has wisely given broad authority to courts to give no more than the circumstances require and the community can stand. I trust the court below will fully understand, in exercising that discretion, that the "Fernley ticket" to any special advantage has been cancelled.

I join the majority.

PAPADAKOS, J., joins this concurring opinion.

LARSEN, Justice, dissenting.

I vigorously dissent.

The Commonwealth Court was correct in holding that Solebury Township's zoning ordinance unconstitutionally excludes the development of mobile home parks. The majority is incorrect in framing this issue as a matter of factual dispute.[1] Ordinances rise and fall on their face. A use is either included or it is excluded *as a matter of law*, and this matter is quite simply determined by reading the ordinance. A party to an exclusionary zoning dispute cannot by evidence show that apples are oranges or that two plus two equals five. Trial courts need not pore over the records in these cases to find evidence of inclusion or exclusion. Rather, they must examine the plain meaning of

2. Pa. Municipal Planning Code, 53 P.S. § 10101, *et seq.*

1. The majority states that "the court of common pleas found that the ordinance did prohibit mobile home parks, rejecting the Township's contrary finding *for lack of substantial evidence.*" Maj. op. at 1 (emphasis added). In discussing *In Re: M.A. Kravitz Co., Inc.,* 501 Pa. 200, 460 A.2d 1075 (1983), the majority states that the township's determination that townhouse development was a permitted use was "supported by *substantial evidence* in the record and affirmed by the court of common pleas." Maj. op. at 3 (emphasis added). And in discussing *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board,* 5 Pa. Commw. 594, 290 A.2d 719 (1972), the majority states that "the court, while acknowledging that such evidence might exist, *found no evidence in the record* before it from which it could conclude that the burden of demonstrating the unconstitutionality of the ordinance had been met." Maj. op. at 4–5 (emphasis added).

the ordinances themselves, using the statutory rules of construction to interpret the words of the ordinances. To allow the meanings of the ordinances to depend upon what zoning boards wish them to mean is to throw the law into chaos, and will encourage these governing bodies to continue engaging in practices that exclude persons of moderate and limited income from residing in their communities.

In addition, the majority commits grievous error in remanding the case for entry of an order and proceedings consistent with a section of the Municipalities Planning Code which came into effect *after* the case was argued to this Court.[2] A majority of this Court previously considered the 1978 amendment that was made to *this* section of the Code, and determined that a retroactive application of the amendment to a case which challenged a zoning ordinance before the amendment went into effect constituted a violation of due process. *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 502 A.2d 585 (1985), *reargument denied.*

It is manifestly unjust to change the "rules of the game" while a case wends its cumbersome way through our appellate system. We are always striving to achieve predictability in the law, so that citizens can be able to continually keep their affairs and behavior in order. The majority today, by giving retroactive effect to section 1006–A of the Code, 53 P.S. 11006–A, seriously undermines this goal.

Accordingly, I would affirm the order entered by the Commonwealth Court wherein it remanded the case to the Court of Common Pleas of Bucks County for the entry of an order consistent with the provisions of section 1011(2) of the Code, 53 P.S. § 11011(2), with the common pleas court retaining jurisdiction for the purposes of ensuring that development is not prevented or unduly burdened for reasons of retribution.

---

**2.** Section 1011(2), 53 P.S. § 11011(2), was repealed and section 1006–A, 53 P.S. § 11006–A, was enacted on December 21, 1988, to become effective in 60 days, or approximately four months after the case was argued.