Colonial Park for Mobile Homes, Inc., Appellant
v. New Britain Township, Appellee.

460

Argued April 6, 1979, before Judges CRUMLISH, JR., ROGERS and CRAIG, sitting as a panel of three. Reargued September 12, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE, CRAIG and MAC-PHAIL.

*Peter N. Harrison,* for appellant.

*Albert L. Blackman, Jr.,* with him *George M. Bush,* for appellee.

OPINION BY JUDGE ROGERS, November 30, 1979:

Colonial Park for Mobile Homes, Inc. has appealed from a decision of the Bucks County Court of Common Pleas which upheld the constitutionality of the New Britain Township Zoning Ordinance of 1974 and refused Colonial Park's request for curative amendment. We affirm.

In 1972, Colonial Park acquired a 15.4 acre tract of land in New Britain Township. At the time of Colonial Park's acquisition of the tract a mobile home park accommodating 36 mobile homes was located on about one-fourth of its land area. Colonial Park continued to operate the park. In 1974, the Township enacted a zoning ordinance which placed the property in a district called "Holding Zone—1".

On February 12, 1975, Colonial Park submitted a request for curative amendment to the Board of Supervisors of New Britain Township pursuant to Section 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004 with a challenge to the substantive validity of the Township Zoning Ordinance. Colonial Park contended that the ordinance was unconstitutionally exclusionary because it makes no provision for mobile home parks within the township. Colonial

Park's suggested cure was a proposed ordinance which would place its tract in a proposed new Mobile Home Park District where such parks would be permitted. The development plan which Colonial Park submitted with its curative amendment proposed development of its tract at a density of five and a half dwelling units per acre. After five nights of hearings, the Board of Supervisors rejected the request for curative amendment. The Court of Common Pleas of Bucks County, to which Colonial Park appealed the Supervisors' action, affirmed the decision of the Board of Supervisors.

Mobile home parks are a legitimate land use, *East Pikeland Township v. Bush Brothers, Inc.*, 13 Pa. Commonwealth Ct. 578, 319 A.2d 701 (1974), and may not be wholly barred by zoning regulations without proof that the use of any land in the municipality for the purpose would be injurious to public health, safety or welfare. *McKee v. Township of Montgomery*, 26 Pa. Commonwealth Ct. 487, 364 A.2d 775 (1976). We agree with the Bucks County Common Pleas Court that the zoning ordinance in this case did not prohibit mobile home park use in all of New Britain Township.

The respective positions of the parties are unusual. In the usual case of this class, the landowner desiring to use his land for a residential purpose forbidden by zoning regulations in the district in which the land is located contends that the regulations are unlawful because they forbid the use not only on his land but throughout the municipality; the municipality counters that, although its zoning regulations forbid the use in question on the landowner's property, they allow it in other zoning districts with the result that there is no unlawful total exclusion. *See, for example, Berger v. Board of Supervisors of Whitpain Township,* 31 Pa. Commonwealth Ct. 386, 376 A.2d 296 (1977). Here, the municipality contends that un-

der its zoning ordinance the use which the landowner says is totally excluded, may be established anywhere within its boundaries, including, especially, that part of the landowner's property not already devoted to the use. The use is permitted, the township declares, as a Planned Residential Development (PRD) upon application and approval. Somewhat parenthetically, we note that it is undisputed that under New Britain's zoning regulations Colonial Park may expand its present operation by 50%, which raises the interesting question, which we are not here required to decide, of whether a landowner can successfully maintain that it is the victim of unconstitutional exclusion by the terms of an ordinance where the constitution itself (and here additionally, the zoning ordinance) gives it the right to expand its existing use.

Rather than apply for approval of the establishment of an enlarged or new mobile home park as a PRD, as the township says is available to it, Colonial Park insists that the township has misconstrued its own ordinance and that the township's zoning regulations forbid mobile home parks. The understandable reason for this unwillingness is that if the ordinance is struck down Colonial Park proposes to establish a mobile home park with a density of 5.5 units per acre—a more favorable result than would be obtained under the ordinance, which provides for a maximum density of 2.3 units per acre. This is, therefore, a lawyer's case in which we are required to examine the zoning ordinance to see whether it excludes mobile home parks throughout New Britain Township, as Colonial Park says, or whether mobile home parks may be established under the PRD provisions anywhere in the township, as New Britain insists and the court below decided.

There is a presumption that the ordinance is valid so that Colonial Park had the burden of proving its

invalidity. *Appeal of Gro,* 440 Pa. 552, 269 A.2d 876 (1970).

The ordinance provides the following definitions:

Section 248 *Trailer*

Any vehicle designed, intended, arranged or used as a dwelling, whether arranged to stand on wheels or rigid supports. For the purpose of this Ordinance any inhabited trailer or mobile home shall be a single-family dwelling and as such, be subject to all applicable regulations in this or other Township Ordinances.

Section 249 *Trailer Park*

More than one trailer on a single lot.

It is true that the ordinance does not explicitly declare that the use of land for trailer parks (or mobile home parks) is permitted; on the other hand, neither does it explicitly prohibit such use. One may wonder why trailer parks are defined if it was intended that they be excluded. The township contends that exclusion was not intended and that inclusion is provided by Article VI, Planned Residential District of its zoning ordinance.

The two opening sections of Article VI read:

Section 600 *Purpose*

It is the purpose of this Article to encourage and promote flexibility and ingenuity in the layout and design of new developments, enabling the developer to provide a variety of housing types, appropriate non-residential uses, while using open space areas to protect the environment and provide recreation on parcels of five (5) acres or more, through the creation of a Planned Residential Development District by the New Britain Township Supervisors. To meet these ends, procedures combining the administration of zoning and subdivision approval have been developed for use in PRD's.

Section 601 *Establishment of Districts*

Any landowner may request the establishment of a Planned Residential District on a tract containing five (5) or more acres of land, consisting of one or more contiguous parcels of land under one ownership. Such a district may be established by the New Britain Township Board of Supervisors in accordance with sections of this Article upon approval of a tentative plan. [sic]

Paraphrased, these provisions say that the purpose of PRD is to provide a variety of housing types, that PRDs may be established on any parcel of five acres, and that such district may be established by the Board of Supervisors upon tentative approval of a plan for a PRD.[1]

Sections 603 through 608 of Article VI set out specific standards concerning density, open spaces, roads, recreation facilities, ownership of units[2] and other particular features required of PRDs. Sections 608, 609, 610, 611 and 612 of Article VI of the ordinance are materially identical, respectively, to Sections 707, 708, 709, 710 and 711 of the Pennsylvania Municipalities Planning Code, 53 P.S. §§10707

---

[1] Section 404 of Article IV of the ordinance is a presentation in tabular form of the uses permitted in the several zoning districts. Among the residential uses listed is "Planned Residential Development" under which appears a footnote saying "This use requires a zoning change." This phrase clearly refers to Section 601's statement that a PRD district may be established by the Board of Supervisors upon approval of the tentative plan for the PRD.

[2] Section 601(1)(6) provides that a density bonus shall be allowed where the plan provides for individual ownership of dwelling accommodations. This makes it plain that more than one dwelling unit may be established on a lot, defined elsewhere as a parcel of land in one ownership. It will be recalled that a trailer park is defined as more than one trailer on a single lot.

through 10711, relating to applications for tentative approval, public hearings of such applications, findings thereon, the status of the plan after tentative approval and applications for final approval.

Hence, since a mobile home park is a type of housing and Colonial Park has considerably more than five acres left undeveloped of its 15 acre tract, it seems clear to us, as it did to the court below, that Colonial Park may apply for approval of a mobile home park on its unused ten or so acres as a PRD. If Colonial Park should apply for approval, and if its application conforms to the standards set out in Article VI (and there is no suggestion in this record that these standards cannot be met), it would be entitled to tentative approval of its plan. The matter of approval is not simply discretionary with the Board of Supervisors. In *Doran Investments v. Muhlenberg Township Board of Commissioners,* 10 Pa. Commonwealth Ct. 143, 309 A.2d 450 (1973), we held that the provisions of the Pennsylvania Muncipalities Planning Code relating to PRD require that the governing body must judge the merits of a PRD application by the standards set forth in the ordinance, and that the denial of tentative approval to a plan which does conform to the standards of the ordinance, except in exceptional circumstances, is an abuse of discretion.

Colonial Park makes no assertion that New Britain Township has not undertaken to provide a fair share of the housing needs of the area. Indeed, of the total of 1628 dwelling units in the township about 6% are mobile homes and there are two existing mobile home parks, including the one operated by the appellant.

A residential development with a density of 2.3 dwelling units per acre would, if all lots were to be equal in size, require each lot to contain about 18,700

square feet.[3]   We have heretofore upheld zoning ordinances alleged to be exclusionary of mobile home parks requiring lots of 15,000 square feet (*Russell v. Penn Township Planning Commission,* 22 Pa. Commonwealth Ct. 198, 348 A.2d 499 (1975)); and 20,000 square feet (*Delaware County Investment Corp. v. Middletown Township Zoning Hearing Board,* 22 Pa. Commonwealth Ct. 12, 347 A.2d 513 (1975)) *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board,* 5 Pa. Commonwealth Ct. 594, 290 A.2d 719 (1972). Colonial Park relies on *Board of Supervisors of Upper Frederick Township v. Moland Development Co.,* 19 Pa. Commonwealth Ct. 207, 339 A.2d 141 (1975). The issue in that case, in which also a landowner desired to establish a trailer park, was whether an ordinance regulating lot sizes and dimensions was a proper exercise of a general legislative grant of authority to townships to pass ordinances for the protection of public health, safety and welfare, or whether it was a *de facto* zoning ordinance.   We affirmed a lower court's decision that the ordinance was a *de facto* zoning ordinance because it had not been enacted in accordance with the procedures required for the enactment by the Pennsylvania Municipalities Planning Code.   We also agreed with the court below that the restrictions on lot development in the ordinance were such that mobile home parks were in fact totally excluded.   The restrictions there were much more onerous than those of Article VI of the New Britain ordinance, as the following from *Upper Frederick* demonstrates:

> Among other requirements not here contested. Ordinance 60-1 requires minimum lot size of 31,250 square feet, a minimum frontage

[3] Under New Britain's PRD regulations individual lots may be as small as 9,000 square feet.

on a public street of 125 feet, minimum lot depth of 250 feet, minimum front yard of 60 feet, and also has side and rear yard requirements. It provides exceptions for a 'private garage or other accessory building' and also provides for 'Exceptions for Hardships'. It specifically permits trailers as long as they comply with all the above requirements and a somewhat more restrictive side yard requirement.

*Upper Frederick, supra,* at 211, 339 A.2d at 143.

Moreover, while the operator of Colonial Park's existing mobile home park testified that federal agencies have approved loans for mobile home parks of eight units per acre and that it was his opinion mobile home buyers don't want to place them on large lots, there is no evidence in the record that a mobile home park with a density of 2.3 units per acre would be infeasible.[4] The same witness testified, moreover, that he was unfamiliar with the PRD provisions of New Britain's zoning ordinance.

Colonial Park also erects an argument based on Section 501 of the Pennsylvania Municipalities Planning Code, 53 P.S. §10501, which provides that regulations regarding mobile home parks "shall be set forth in separate and distinct articles of any subdivision and land development ordinance pursuant to Article V or any planned residential development ordinance adopted pursuant to Article VII." The argument seems to be that since there are no separate and distinct articles regulating mobile home parks by name in New Britain's ordinance, mobile home parks have not been provided for and are therefore

---

[4] Article VI offers a number of density bonuses for the provision of services which could increase the number of allowable units per acre.

excluded. We do not believe that Section 501 means that if mobile home parks are to be permitted they must be specially regulated but that it means if the municipality wishes specially to regulate mobile home parks it must do so in separate and distinct articles. Since mobile home parks constitute a legitimate type of housing which may not be excluded, we see no reason why they cannot be made subject to regulations generally applying to all PRD uses.

In sum, we agree with the Court of Common Pleas of Bucks County that Colonial Park did not carry its burden of proving that the New Britain Township zoning ordinance excluded the establishment of mobile home parks and with the township's assertion that the ordinance indeed permits the establishment of a park on Colonial Park's land.

Order affirmed.

### Order

And Now, this 30th day of November, 1979, the order of the Court of Common Pleas of Bucks County made February 28, 1978 is affirmed.

---

Dissenting Opinion by Judge Craig:

The exclusionary zoning doctrine of the Pennsylvania Supreme Court and of this court has been breached by the majority's belief that we are merely allowing a flexible municipal approach.

Here a municipality whose zoning ordinance provisions prohibit mobile home parks has escaped the exclusionary zoning doctrine by the adroit device of claiming that the planned residential development (PRD) ordinance provisions (adopted under statutory authority distinct from zoning) can be construed to allow mobile homes in a "Planned Residential Development District" even though (1) no such

"Planned Residential Development District" has yet been placed on the zoning map, and (2) the PRD provisions omit mobile home parks from the listings of allowable housing types.

This dissent is based upon the following concerns:

1. The zoning ordinance provisions (as distinguished from the PRD provisions) plainly prohibit mobile home parks.

2. Local legislative action seems to be required in order to make a mobile home park even possible, by way of a PRD "district".

3. Moreover, the PRD provisions exclude mobile home parks from all listings of uses permitted in a PRD.

4. The statutory requirement that provisions regulating mobile home parks be set forth in distinct articles of a PRD ordinance is violated here.

5. Even if provision for mobile home parks can be read into the "Planned Residential Development District", because no such district is yet in existence, future allowance thus depends upon PRD discretion, not zoning predictability.

Fundamental to perceiving the township's rather clever device here is a recognition that the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10101 et seq., makes an organic distinction between planned residential development ordinances under its Article VII (53 P.S. §§10701-10711), as distinguished from zoning ordinances—to which the exclusionary zoning doctrine applies—governed by its Article VI (53 P.S. §§10601-10619.) A cursory reading of those articles shows that a zoning ordinance is as different from a planned residential development ordinance as it is from the "subdivision and land development ordi-

nance" authorized by MPC Article V (53 P.S. §§10501-10515) and the "official map" enactment authorized by MPC Article IV (53 P.S. §§10401-10408). In MPC §702, 53 P.S. §10702, the express grant of power is to enact "ordinances fixing standards and conditions for planned residential development." Their absence of identity with zoning ordinances is underscored by the fact that the same section makes distinct provision for the enactment procedure of a PRD ordinance by reference to, not as a part of, zoning ordinance enactment procedure.

Once the separateness of the two planning tools of zoning and PRD is noted, it appears that the majority decision has given its imprimatur to evading the exclusionary zoning doctrine by reliance on a procedure separate from zoning. Our courts certainly would not permit a municipality, when guilty of totally excluding a legitimate use from its zoning ordinance, to argue successfully that such use might be allowed if approved ad hoc under its subdivision ordinance, for example; yet here a similar argument has been accepted.

The provisions of the planned residential development ordinance of New Britain Township here have been sandwiched into the ordinance entitled "New Britain Township Zoning Ordinance, 1974" (Ordinance), but the fact that such provisions were adopted under MPC Article VII is made plain by observing that the procedural content of the Ordinance's Article VI, "Planned Residential Development," have been drawn verbatim from MPC Article VII.[1] Of

---

[1] MPC Article VII as the verbatim source of New Britain's PRD provisions is made plain by comparing Ordinance §608 with MPC §707, both dealing with application for tentative approval, Ordinance §609 with MPC §708, both dealing with public hearing, Ordinance §610 with MPC §709, both dealing with findings, Ordi-

course, there is nothing objectionable in thus codifying two kinds of provisions into a single ordinance format, but the distinctness of their statutory roots is not affected thereby.

Analysis of the New Britain ordinance, as set forth in the record, is necessary to bring out the first four points noted above.

1.

The zoning provisions in the Ordinance do not allow mobile home parks. Section 400 of the Ordinance reads:

> Except as provided by law or in this Ordinance, in each district no building, structure, or land shall be used or occupied except for the purposes permitted in Section 404 and for the zoning districts so indicated.

Section 404 is the complete tabular listing of uses; it does not mention mobile homes, trailers or mobile home parks anywhere. Its "Residential" grouping includes "Single-Family detached" and "Single-Family detached cluster" but no other housing type. That grouping also expressly incorporates "Planned Residential Development", indicating by the letter "Y" that such "Planned Residential Development" is a permitted use in a PRD district and by an asterisk that a PRD use in a residential district (RR) "requires a zoning change." In addition, planned residential district use is labled "N" as to every other category of district, a letter designation meaning "not permitted", according to Ordinance Section 401(e).

It is thus plain, and the majority seems to agree, that if a mobile home park is allowed in New Britain

nance §611 with MPC §710, both dealing with status of plan after tentative approval, and Ordinances §612 with MPC §711, both dealing with application for final approval.

Township at all, it must come about under the PRD category.

### 2.

Examination of the PRD provisions shows that the Ordinance treats planned residential development (1) as a separate "district", and (2) as one which requires a "zoning change".

Section 301 of the Ordinance is decisive because it lists the Planned Residential Development PRD District as a separate zoning district, not just as an administrative action. Section 304(a)(2) reiterates the same treatment, describing it as a "special residential district", and Section 601 refers to "establishment" of such a district by the governing body.

The necessity of a legislative amendment for PRD is thus acknowledged, and that necessity is echoed in the Ordinance's Section 404 comment that PRD "requires a zoning change."

Of course, if mobile home parks are excluded so as to be available only by the enactment of an amendment to the ordinance, then we clearly have an exclusion of the sort which has been judicially condemned. In every one of the court decisions holding an ordinance to be exclusionary, there has always been the possibility that the use could be allowed by enacting an amendment, but it is clear that a condemned exclusion can be cured only by the enactment of the amendment, not by the *possibility* that it *may* be enacted.

### 3.

Moreover, even in a PRD District, there is no provision to permit mobile home parks.

If we look at the specific regulations of the PRD provisions in the Ordinance, we first see Section 602(b), stating that the uses in a PRD "shall be

those indicated in Section 404", the table of uses previously noted. Thus we have the trap of a renvoi; Section 404 lists no residential use (other than single-family) except PRD, and the aforementioned PRD Section 602(b)—stating the permitted PRD uses—refers us back only to Section 404.

Perhaps most significant is the statement in Section 602(a) of the Ordinance ("Densities and Uses") that:

> The PRD shall meet all the requirements of Article V and Section 405 (use 6).

Article V sets out performance standards mentioning "PRD" in general and single-family, but no other specific housing type, so we still come around in a circle. Section 405 purports to set out "Use Regulations," consisting of area, dimensional, parking and other requirements for the various use categories. Subsection (4), headed "Residential," mentions only single-family detached.

PRD housing uses are covered by the above-quoted reference to Section 405 (use 6)—§405(6). That subsection is the crucial statement; it says that, in a PRD:

> The varieties of housing types indicated in (a) through (i) below are permitted subject to meeting all performance requirements of Article V.

The listing is: (a) and (b) single-family, (c) duplex, (d) patio house, (e) multiplex, an attached dwelling, (f) atrium house, (g) townhouse, (h) garden apartments, and (i) mid-rise apartments.

Mobile home park just is not there in that exhaustive listing of the "varieties of housing types" provided for. It is impossible to believe, with extremely detailed area, bulk and parking regulations covering all aspects of the housing uses just enumerated, that

mobile home parks could be contemplated without *any* regulation of setbacks, yards, width, coverage, parking and the like. Does the township expect us to believe, for example, that with offstreet parking ratios specifically laid out for every other type of housing in a PRD, mobile home parks are included without any off-street parking requirement?

4.

The total absence of any mention of mobile home parks in the PRD provisions, as against the great specificity of regulations for all other kinds of housing types, underscores the departure here from the modest requirement of MPC §501, 53 P.S. §10501, that:

> Provisions regulating mobile home parks shall
> be set forth in separate and distinct articles of
> . . . any planned residential development ordinance adopted pursuant to Article VII.

The failure to mention mobile home parks necessarily means that there is no separate or distinct article governing them. The majority opinion excuses this failure by interpreting the MPC section to mean that a separate article is required only if mobile home parks are regulated "specially", not if they are only "subject to regulations generally applying to all PRD uses." As noted above, in the Section 405 "Use Regulations" there are no regulations made applicable to all PRD uses; all housing types are treated specifically.[2]

---

[2] It is also clear that the specific requirements in Ordinance Section 405 pertaining to single-family detached and single-family detached cluster cannot be applicable to a mobile home park because the Ordinance, as the majority notes, defines "Trailer Park" only as "More than one trailer on a single lot", and the single-family provisions apply only to residences on *individual* lots, including single-family cluster (Ordinance §405(5)).

It seems that the majority decision may have defeated the very purpose of MPC §501, to insure that mobile home regulation be explicit.

5.

The majority, undoubtedly sharing our concern to preserve the vitality of the exclusionary zoning doctrine, find reassurance in the sound legal principle that PRD approval is not a matter of untrammeled discretion. *Doran Investments v. Muhlenberg Township Board of Commissioners,* 10 Pa. Commonwealth Ct. 143, 309 A.2d 450 (1973). We do not here reach the point of that reassurance, however, if the New Britain PRD provisions do not even contemplate a mobile home park, as seems to be shown by the foregoing exhaustive analysis of the ordinance.

Nevertheless, if we assume that a mobile home park, as a use type, can be allowed in New Britain Township *if* you have the required minimum of 5 acres to begin with, and *if* you successfully follow the complex procedural path not applicable to zoning approvals (even for special exceptions and conditional uses), the absence of specifications for mobile home parks means that there are no guidelines by which that discretion can be measured.

Moreover, as discussed under 2 above, the New Britain ordinance expressly treats a PRD district as a floating district, as yet not brought down to earth anywhere in the municipality. In Section 304(a)(2) of the ordinance, New Britain goes beyond the scheme of MPC Article VII and defines a "Planned Residential District" as a special residential district that "developers may request . . . ." That declaration clearly smacks of the floating zone approach condemned by the Pennsylvania Supreme Court in *Eves v. Zoning Board of Adjustment,* 401 Pa. 211, 164 A.2d

7 (1960). If New Britain is making a specific invitation for rezoning applications, they have run afoul of the remaining vitality of the *Eves* case. *See Donohue v. Zoning Board of Adjustment*, 412 Pa. 332, 194 A.2d 610 (1963). And here the zoning map on the record shows no PRD district yet brought down to earth.

Of course, the *Eves* decision antedated statutory authorization of planned residential development approval by the fundamentally administrative process described in MPC Article VII. Yet, two points are to be made: First, this ordinance goes beyond the concept of administrative approval of a PRD plan by providing for the "establishment" of a planned residential development "district" by a "zoning change." Secondly, even if this township—or any other township seeking to avoid being exclusionary by using the PRD process—were to adhere to the authorized administrative approval procedure described in MPC Article VII, we should not permit that non-zoning process to provide a loophole when a legitimate use has been wholly excluded from the zoning framework of the municipality. The PRD approval process, clearly authorized by statute, is highly desirable for the planning and design flexibility which it affords, but that very same quality of great flexibility through broad governmental discretion makes it inappropriate when it is offered as the sole answer to an exclusion.

Today, when mobile home housing offers many citizens their chance to have a home of their own, this decision will let it be ruled out of suburbs claiming to allow it by PRD.

In Pennsylvania, led by the Supreme Court, we have pioneered in the evolution of the exclusionary zoning doctrine. I must dissent because this majority decision approves an evasion which eliminates the efficacy of that doctrine.

Judges CRUMLISH, JR. and BLATT join in this dissent.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I hold to the view that an 18,700-square-foot lot area requirement for mobile home park usage is an unreasonable regulation. My reasons for such a view are fully set forth in my dissenting opinions filed in *Delaware County Investment Corp. v. Zoning Hearing Board of the Township of Middletown*, 22 Pa. Commonwealth Ct. 12, 347 A.2d 513 (1975), and in *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board*, 5 Pa. Commonwealth Ct. 594, 290 A.2d 719 (1972).[1]

Judge CRAIG joins in this dissent.

---

[1] Although these two cases were factually concerned with a 20,000-square-foot lot area requirement for mobile home park usages. I consider the basis of my dissents in those cases to have application in the instant case.