520 A.2d 159

Gerard V. McKown, Appellant *v.* Board of Supervisors of East Fallowfield Township, Chester County, Pennsylvania, Appellee.

Argued December 10, 1986, before President Judge CRUMLISH, JR. and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*John D. Snyder,* with him, *William H. Lamb, Lamb, Windle & McErlane, P.C.,* for appellant.

*Thomas R. Wilson,* with him, *Fronefield Crawford, Jr., Crawford, Wilson and Ryan, P.C.,* and *Daniel J. Kelly,* with him, *Robert Shaffer, Schuster, Shaffer, Palma & Dougherty,* for appellees.

OPINION BY JUDGE CRAIG, March 9, 1987:

In this zoning case, a landowner challenged the East Fallowfield Township Zoning Ordinance as exclusionary, alleging that it failed to provide for the township's fair share of mobilehome park development. The township's board of supervisors rejected the landowner's challenge and curative amendment,[1] concluding that the existing zoning ordinance, which provided for mobilehome park development, as such, in two-tenths of one percent (.2%) of the township's area, was not exclusionary because mobilehome park development could also be accomplished in the R-3 high density residential district. On appeal, the court of common pleas affirmed on the same grounds, without taking additional evidence. Consistent with our scope of review,[2] we must determine

---

[1] The landowner filed his application for curative amendment under section 609.1 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10609.1.

[2] Where the trial court takes no additional evidence, our scope of review is limited to a determination of whether the municipal authority committed an error of law, or a manifest abuse of discretion. *Cracas v. Board of Supervisors of West Pikeland Township,* 89 Pa. Commonwealth Ct. 424, 492 A.2d 798 (1985).

whether the board of supervisors erred in concluding that the zoning ordinance was not exclusionary with respect to mobilehome park development.

The landowner also asserts that the board of supervisors erred in permitting the late intervention of the township planning commission as a party in opposition to the landowner's application for curative amendment.

The landowner's 80-acre tract, located along Route 82, a major artery near Coatesville, is presently zoned O-I (Office/Industrial). Hilltop Mobilehome Park, a pre-existing, nonconforming use,[3] borders his property on the western side.

Only twenty-four of the township's 10,202 acres of land are specifically zoned for mobilehome park development. However, the board determined that mobilehome park development could also occur in the R-3 high density district under the planned residential development (PRD) provision in the ordinance.

Hence, the key issue is whether the provision in the zoning ordinance which allows for planned residential development necessarily allows for mobilehome park development so that the ordinance, viewed in its entirety, is not exclusionary with respect to mobilehome park development.

First, there is the landowner's attack upon the late intervention of the planning commission.

### Planning Commission Intervention

The board of supervisors permitted the planning commission to intervene on the second of four nights of hearings. The landowner asserts that the board of

---

[3] Hilltop Mobilehome Park, although it existed before the zoning enactment, is now a permitted use in the mobilehome park district. However, the park is nonconforming as to density requirements.

supervisors erred in permitting that late intervention because the planning commission had no legally enforceable interest in the matter, and because the late intervention was prejudicial to the landowner in that it resulted in unnecessary factual repetition at later hearings.

As the trial judge correctly noted, this court has held that a township planning commission may intervene as a party in opposition to an application for curative amendment. *Blouch Zoning Ordinance Appeal,* 26 Pa. Commonwealth Ct. 147, 362 A.2d 1139 (1976). Because the record does not support the landowner's assertion that the late intervention was prejudicial, as generating unnecessary repetition or otherwise, we find that the board of supervisors did not abuse its discretion in allowing the planning commission to intervene after the first hearing on the application.

### Merits

Our courts have developed a fair share analysis to assess the exclusionary impact of zoning regulations which are alleged to be exclusionary with respect to a particular type of housing. In *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977), the Supreme Court set forth a three-part fair share analysis. Under that analysis, the initial inquiry must focus upon whether the community in question is a logical area for development and population growth. Once it has been established that the community is in the path of growth, the present level of development within the community is then examined. If that community is situated in the path of growth and is not already highly developed, the third step is to ascertain whether the zoning ordinance has the practical effect of unlawfully excluding the proposed use.

The landowner asserts that the board erred in applying the *Surrick* analysis here because of the Supreme Court's decision in *Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985). In *Fernley,* the Supreme Court held that a fair share analysis is inapplicable when reviewing a zoning ordinance which totally prohibits a basic type of housing. The landowner asserts that the *Fernley* holding is also applicable to situations, as here, where the zoning ordinance expressly provides only a "mere token" allowance for a basic type of housing. However, the Supreme Court specifically stated in *Fernley* that the fair share analysis was developed "as a means of analyzing zoning ordinances which effect a partial ban that amounts to a *de facto* exclusion of a particular use, as distinguished from those ordinances which provide for a total or *de jure* exclusion." *Fernley* at 418, 502 A.2d at 588.

Although the zoning ordinance here provides only 24 acres for mobilehome park development, there is no outright prohibition against mobilehome park development, nor is there a total failure to allow it. At most, there can be a *de facto* exclusion. Hence, the board correctly applied the *Surrick* fair share analysis in reviewing the zoning ordinance.

In reviewing the board's decision, the trial court determined that the board found that East Fallowfield Township was not located within the path of growth and was not a logical place for increased development. However, an examination of the board's decision reveals that the board did not make any finding negating growth and development status. The board did find that "East Fallowfield Township is experiencing growth but said growth is not the result of an exodus from the adjoining municipalities."[4] Additionally, in its discussion section,

---

[4] Board Finding of Fact No. 16.

the board found that "[a]s a rural, residential Township naturally there has been growth. . . ." Although the decision further notes that the growth has not been in mobilehomes, these findings do not permit a conclusion that the board determined that the township was not in the path of growth. Indeed, those findings of the board necessarily import that the township *was* experiencing growth. The fact that the board proceeded to apply the further steps of the *Surrick* analysis in reaching its final conclusion is consistent with that reading of the findings.

As to whether the ordinance had the practical effect of unlawfully excluding mobilehome park development, the board determined that mobilehome park development was permitted in the R-3 high density residential district as a planned residential development. The landowner asserts a statutory construction argument that, because the zoning ordinance specifically provides for a mobilehome park district, and because the PRD district permits single-family dwellings, the "single-family dwelling" category cannot embrace mobilehome dwellings. This court rejected a similar argument in *Colonial Park v. New Britain Township*, 47 Pa. Commonwealth Ct. 459, 408 A.2d 1160 (1979), concluding that, even where the PRD provision did not include mobilehome parks in its listing of permitted uses, a mobilehome park was within the types of housing which the PRD provision contemplated. This court held in *Colonial Park* that a zoning ordinance which thus allows a mobilehome park as a permitted use in a PRD district will not be viewed as exclusionary with respect to mobilehome park development, as long as the area set aside for planned residential development is not a token amount.

However, this case is nevertheless distinguishable from *Colonial Park* because, as the landowner correctly

asserts, the board erred in concluding that a mobile-home park was a permitted use in the PRD district.

Section 1104.2 of the East Fallowfield Township Zoning Ordinance, regarding planned residential development, establishes the following use regulations:

    a.  *Housing mix*
    Each PRD shall subscribe to the following minimum dwelling unit mixed standards:
        1.  Twenty-five (25) percent single-family minimum.
        2.  Twenty-five (25) percent two-family minimum.
        3.  Twenty (20) percent multi-family minimum.

According to that housing mix requirement, any proposed development in a PRD district could consist only 55% of mobilehomes, at the most, because the ordinance clearly requires that 45% of the dwellings must be two-family and multi-family units, *i.e.,* other than mobilehomes, which are single-family units. This court previously stated in *Environmental Communities of Pa., Inc. v. North Coventry Township,* 49 Pa. Commonwealth Ct. 167, 169, 412 A.2d 650, 651 (1980), that:

> [A] mobile home park is not simply a conglomeration of mobile homes, but rather a planned community involving social, recreational and commercial activities. . . .
>
> Even if we assume that a mobile home is impliedly a permitted usage, it has been previously determined by this Court that the device of permitting mobile homes on individual lots will not substitute for the responsibility of providing for mobile home parks. (Citation omitted.)

Because the PRD requirement as to housing mix (which does not provide for any exception) only permits a residential development with a maximum of 55% of its units

being mobilehomes, a mobilehome park—with 100% of the dwellings being mobilehomes—is not the type of housing development which this PRD provision contemplates. Hence, we must conclude that the board erred in determining that mobilehome park development was a permitted use as a planned residential development.

Excluding the planned residential development district as an alternative area for mobilehome park development leaves a zoning ordinance which allows for mobilehome development in only two-tenths of one percent of the total township area, a token allowance which has the practical effect of unlawfully excluding mobilehome park development. *Township of Willistown v. Chesterdale Farms,* 462 Pa. 445, 341 A.2d 466 (1975) (where an ordinance which allotted seven-tenths of one percent (.7%) of that township's area for apartments was found exclusionary).

Accordingly, we must remand this case to the Court of Common Pleas of Chester County to formulate an order defining proper relief, in accordance with section 1011(2) of the Municipalities Planning Code (MPC), 53 P.S. §11011(2).

### ORDER

Now, March 9, 1987, the order of the Court of Common Pleas of Chester County, No. 84-00354, dated August 19, 1985, is reversed, and this case is remanded to that court to formulate an order defining proper relief, in accordance with section 1011(2) of the Pennsylvania Municipalities Planning Code.

Jurisdiction relinquished.

---

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent and would affirm the order of the trial court. The majority view would give greater

deference to mobilehome parks than to every other type of residential housing, an application and result I believe clearly not intended by our Supreme Court under *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977) or *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 502 A.2d 585 (1985). The essential concept of a PRD is a planned community for *all* the various types of housing units within the development and I see no reason why mobilehomes in a PRD should be entitled to their *own* social, recreational and commercial facilities and their *own* planned activities. *See* Section 107(14) (definition of a Planned Residential Development) and Section 701 (purposes of a Planned Residential Development) of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S.§§10107(14), 10701.

Judge COLINS and Judge PALLADINO join in this dissent.